IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HAROLD D. COLGAN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-970 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| Defendant. | ) | |

### *OPINION*

Cercone, District Judge

## I.    Introduction

Harold Colgan ("Plaintiff") brought this action pursuant to 42 U.S.C.§405(g) and 1383(c)(3) for review of the final determination of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. As is the customary practice in the United States District Court for the Western District of Pennsylvania, the parties have submitted cross-motions for summary judgment based on the record developed at the administrative proceedings.

After careful consideration of the decision of the Administrative Law Judge ("ALJ"), the briefs of the parties and the entire administrative record, the Court finds that the decision of the Commissioner is not supported by substantial evidence.  Therefore, Plaintiff's motion for summary judgment will be granted and  the Commissioner's motion for summary judgment will be denied, and the matter will be remanded with direction to recognized that Plaintiff was disabled on or before September 18, 2007.

## II.    Procedural History

Plaintiff protectively filed for SSI and DIB on April 5, 2006, (R. at 64), alleging disability due to right arm tremor, arm, hip and leg pain, (R. at 67), with an alleged onset date of February 8, 2006. (*Id.*). Plaintiff's claims were initially denied by the state agency on October 23, 2006. (R. at 31). Plaintiff filed a timely request for a hearing on December 13, 2006. A hearing was held before ALJ Raymond Zadzilko on November 16, 2007. (R. at 13, 226-255). Plaintiff appeared and testified, represented by counsel. (R. at 226-249). The ALJ also heard the testimony of an impartial vocational expert. (R. at 249- 253). On January 18, 2008, the ALJ issued a decision, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 13-22). Plaintiff filed a request for review of the ALJ's decision on March 19, 2008, (R. at 9), which was denied by the Appeals Council on May 12, 2008. (R. at 5-8).

## III.    Statement of the Case

### Plaintiff's Background

Plaintiff was born on June 19, 1965, making him forty-two years old at the time of the hearing. (R. at 230). He testified that he completed high school and served in the military as a coal mine engineer from 1983 to 1986. (R. at 231).

Plaintiff's past work experience includes work as a conference set up manager at a ski resort from 1990 to 1995. (R. at 232-233). His duties in this position included setting up and tearing down tables and chairs in conference areas. (R. at 233). Immediately prior to his alleged onset date, Plaintiff worked as a carpenter and laborer, building houses. (R. at 233-234). He frequently lifted in excess of fifty pounds, and sometimes lifted in excess of 100 to 200 pounds. (R. at 235). He began to have tremors in his right (dominant) hand and could not perform the necessary job requirements as a result of the tremors and loss of strength. (R. at 235). He then began to work part-time at Capital Glass in an effort to support himself. (R. at 236). According to Plaintiff, however, in this position he was required to tend to machines, but was unable to keep

up with the work as a result of the shaking in his right arm. (R. at 237-238).

Plaintiff's Medical Records

Treatment notes from Plaintiff's primary care physician, Dr. William Kozak, indicate that Plaintiff was first seen in January of 2006 with complaints of twitching in his right hand. (R. at 135). Plaintiff reported that the twitching began six months prior to this visit and continued to become progressively worse. (*Id.*).

According to the medical evidence of record, Plaintiff was seen with complaints of tremor and weakness in his right arm in February of 2006 at Frick Hospital emergency department, after passing out. (R. at 111-115). He was prescribed Valium, (R. at 113), and had a chest x-ray, which was normal. (R. at 116). Additionally, an MRI of the cervical spine was performed, which  showed that there was a small area of bone erosion secondary to either bone injury or arthritis and small fluid collection in the subcoracoid region. (R. at 122).

Plaintiff was seen by Dr. Shobha Asthana, a neurologist, on March 7, 2006. (R. at 128). At this visit, Plaintiff reported weakness and pain in his right upper extremity, as well as pain and weakness in his right leg at night. (*Id.*). Dr. Asthana noted distinct tremors in Plaintiff's right arm. (R. at 130). Additionally, a handwriting sample revealed micrographia. Dr. Ashtana further noted that Plaintiff had right arm rigidity with posturing and tremors. (*Id.*). He recommended an MRI of the brain and provided Plaintiff with samples of Mirapex for tremors. (*Id.*). Dr. Asthana saw Plaintiff again on April 18, 2006. (R. at 124). According to records from Dr. Asthana, a neurological exam showed a mild tremor in Plaintiff's right arm. (*Id.*). Dr. Asthana's impression was that it was possible Dystonia or Parkinson's disease. (*Id.*). Additionally, records from this visit indicate that Plaintiff complained of pain in his right hip and leg, as well as tremors in his right foot. (*Id.*). He was prescribed a higher dosage of Sinemet. (*Id.*). An MRI of the cervical spine performed on April 10, 2006 was normal. (R. at 125).

Plaintiff was seen by Dr. Alejandro Torres-Trejo at West Virginia University Hospital in July 2006. (R. at 139). Plaintiff was observed during sleep and had no tremors, but had

3

noticeable tremors while awake. (R. at 139).  Plaintiff reported to Dr. Torres-Trejo that his right

hand shook constantly and prevented him from using it. (R. at 140).  Dr. Torres-Trejo opined that

the tremors were possibly non-epileptic seizures. (R. at 149).  In November 2006, Dr. Torres-

Trejo saw Plaintiff again for examination. (R. at 200).  At this time, Dr. Torres-Trejo opined that

he had an upper right extremity tremor that was not responding to any medications. (*Id.*).

Plaintiff saw Dr. Michael Parsons, a professor of behavioral medicine at West Virginia

University on August 30, 2006. (R. at 160).  Dr. Parsons opined that Plaintiff's right upper

extremity tremors appeared to be consistently present at rest and at intentional movement. (R. at

161).  Dr. Parsons further opined that, while he could not "absolutely rule out a role of

psychogenic factors ... no frank evidence of somatoform disorder was revealed. He showed an

appropriate and expected level of distress about his symptoms and seems to be doing adequately

in terms of coping with its impact." (*Id.*).

Records from Frick Hospital indicate that Plaintiff was seen in September of 2006 in

regard to his hand tremors. (R. at 153).  Plaintiff also complained at this time that he was unable

to extend his right elbow. (*Id.*).  At this point, the records indicate that Plaintiff was being

followed by a neurologist but the cause of the tremors was still unknown. (R. at 156). He was

prescribed Ibuprofen, Skelaxin and Vicodin. (R. at 158-159).

Plaintiff was referred to Dr. Cathrin Buetefisch at the West Virginia University

Department of Neurology in April 2007. (R. at 182).  Dr. Beutefisch noted:

> This is a very puzzling patient. In reviewing his workup and examination, it seems
> likely that there is a neurological component to his right-sided abnormality which
> could be early hemi-Parkinson syndrome, manly presenting with a resting tremor.
> However, in addition, he seemed to have a voluntary component to it, which could
> be a conversion reaction which is not clear to me. It clearly looks like the patient
> is actively holding the arm in a flexed position and generating the movement to
> some extent. At this point, I would recommend a second opinion ...

(R. at 183).  She prescribed Artane and Requip to address the hemi-Parkinson syndrome. (*Id.*).

Plaintiff was seen for a second opinion by Dr. Joseph Chipman, a neurologist at

Allegheny General Hospital. (R. at 193-195).  On examination Dr. Chipman noted that Plaintiff

had decreased strength in his right upper extremity. (R. at 194).  Additionally, Dr. Chipman noted that Plaintiff had significant cogwheel rigidity of the right upper extremity and that his left upper extremity was normal. (*Id.*).  He noted that Plaintiff's gait was normal and that he had decreased arm swing of the right arm and a rolling resting tremor of his right hand. (*Id.*).  As a result of his examination, Dr. Chipman diagnosed Plaintiff with Hemiparkinsonism. (R. at 194).  His treatment notes state:

> There are certain symptoms that the patient has which meet the criteria for Parkinson disease which include cogwheel rigidity as well as a resting tremor. However, there are some features on his examination which are not consistent with Parkinson disease such as good eye blink and good expression of face. However, at this time, we would have to say that this is hemiparkinsonism.

(*Id.*).  Dr. Chipman prescribed Requip and asked Plaintiff to taper off Artane. (R.a t 194-195).

Plaintiff had a consultative psychological evaluation by Dr. Lenny Detore, Ed.D. on October 11, 2006. (R. at 163).  Dr. Detore noted that during the evaluation Plaintiff had a constant tremor in his right hand that never lessened throughout the interview. (R. at 165).  Dr. Detore opined that Plaintiff had no psychiatric problems or problems in emotional functioning. (R. at 166).  His assessment was that Plaintiff "would be capable of performing his work-related duties emotionally and intellectually, but not physically." (*Id.*).

At the administrative hearing, Plaintiff testified that he became unable to work at his past construction job as a result of tremor and lack of strength in his right arm. (R. at 235).  He also testified that, after leaving this job, he attempted to work for roughly four or five months at a glass factory, but was eventually unable to do the work because of his symptoms. (R. at 236). According to Plaintiff, in addition to being unable to work at any of his previous positions, he is unable to drive, as he finds it difficult to pull his foot off the gas in a timely fashion because he is unable to raise his right leg. (R. at 230).  He takes Requip three times a day, but that his symptoms appear to be getting progressively worse. (R. at 242).  He shakes eighty to ninety percent of the day, continuously. (*Id.*).  He is unable to write or pick up a quarter with his right hand. (R. at 243).  He is unable to hold a cup of coffee in his right hand. (*Id.*).  According to

Plaintiff, he is able to carry things in his left hand, but has no strength in his right, dominant hand. (R. at 244-45).

Plaintiff further testified that his tremors become worse with physical activity. (R. at 243). Additionally, his right leg becomes weak when he walks and that he has fallen as a result. *Id.* He is able to walk for ten to fifteen minutes with a cane before he needs a break. (R. at 244). He can sit for a half hour to forty-five minutes before his leg starts shaking and he has to move. (*Id.*). He becomes physically tired quickly, but is unaware if this is due to side effects of medication or from the constant shaking. (R. at 249).

Plaintiff lives with his mother and child. (R. at 246). According to Plaintiff, he is able to play with his child on a daily basis, but needs assistance from his mother in cooking, giving the child a bath and taking care of household chores. (*Id.*).

## IV.    Standard of Review

The Commissioner's findings and conclusions leading to a determination that a claimant is not "disabled" must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57, 59 (3d Cir. 1988). The task of this court in reviewing the decision below is "to determine whether there is substantial evidence on the record to support the ALJ's decision." *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 118 (3d Cir. 2000). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Morales v. Aphel, 225 F.3d 310, 316 (3d Cir. 2000)(quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)).

As the fact finder, the administrative law judge ("ALJ") has an obligation to weight all the facts and evidence of record and may accept or reject any evidence if the ALJ explains the reasons for doing so. *Plummer*, 186 F.3d at 429. This includes crediting or discounting a

claimant's complaints of pain and/or subjective description of the limitations caused by his or her impairments. *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983); *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999). And where the findings of fact leading to the decision of the Commissioner are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the inquiry differently. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2000). But where a review of the entire record reveals that the Commissioner's decision is not supported by substantial evidence, the court has an obligation to reverse the decision and remand with direction to grant benefits or conduct further proceedings. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984). A remand with direction to grant benefits is appropriate only when substantial evidence on the record as a whole indicates the claimant is disabled and entitled to benefits. *Id*. at 221-22.


**V.    Discussion**

Under the Social Security Act ("Act"), an individual is considered disabled when she is:

unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months. ...

42 U.S.C. §§ 416(i)(1)(A); 423(d)(1)(A); 20 C.F.R. § 404.1505. A person is unable to engage in substantial gainful activity when she:

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for his, or whether he would be hired if he applied for work. ...

42 U.S.C. § 423(d)(2)(A).

When resolving the issue of whether a claimant is disabled within the meaning of the Social Security Act, the Commissioner utilizes a five-step sequential evaluation process. 20 C.F.R. § 404.1520. The process is summarized as follows:

> If at any step of a finding of non-disability can be made, the [Commissioner] will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that [she] is not working at a "substantial gainful activity." §§ 404.1520(b), 416.920(b). At step two, the [Commissioner] will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment of combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities. §§404.1520(c), 416.920(c). At step three, the agency determined whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the [Commissioner] assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the [Commissioner] to consider so-called "vocational factors" (the claimant's age, education and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003).

Plaintiff challenges the ALJ's determination at steps three and five of the sequential evaluation process. (Docket No. 9 at 2). Specifically, Plaintiff argues that the ALJ erred in determining that Plaintiff's impairment does not meet the requirements of Listing 11.06. (*Id.*). Alternatively, Plaintiff contends that the ALJ's determination that Plaintiff had no limitations in his ability to stand or walk is not supported by substantial evidence. Therefore, Plaintiff argues, the ALJ's question to the vocational expert failed to include all of Plaintiff's limitations and thus the vocational expert's opinion that there are jobs that exist in the economy that Plaintiff can perform is not supported by substantial evidence. (*Id.*). The Commissioner maintains that the ALJ's determination is supported by substantial evidence.

The record demonstrates that the ALJ's determination at step three was not supported by substantial evidence and the substantial evidence as a whole supports only the determination that Plaintiff is disabled within the meaning of the Act in any event.

**A.    Whether the ALJ's Determination at Step Three is Supported By Substantial Evidence.**

Plaintiff argues that the ALJ erred in determining that his impairments do not meet the requirements of Listing 11.06. (Docket No. 9 at 9). Plaintiff contends that the medical evidence

8

of record clearly demonstrates that Plaintiff has been diagnosed with hemi-Parkisonism and that his symptoms of the disease satisfy the requirements of this Listing. (Docket No. 9 at 9-10).

The Commissioner argues that Plaintiff's impairments do not meet the requirement of Listing 11.06, insofar as the medical evidence does not support a finding that Plaintiff has significant rigidity or tremors in two extremities. (Docket No. 13 at 12).

At step three of the sequential evaluation process, "[a] claimant may show an inability to engage in substantial gainful activity for a continuous period of twelve months ... by producing evidence that one is disabled per se by meeting or equaling certain listed impairments ... ." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). "For wage earners, the listings at step three of the sequential evaluation process provide a convenient way for the [Commissioner] to determine which claimants are *per se* incapable of performing *any* gainful activity." *Finkelstein v. Sullivan*, 924 F.2d 483, 487 (3d Cir. 1991) (emphasis in original). Indeed, if a claimant's impairment meets or equals an impairment set forth in the regulations at 20 C.F.R. Pt. 404, Subpt. P., Appx. 1, this will be sufficient to direct a finding of disability. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d); *Bowen v. Yuckert*, 482 U.S. 132, 141 (1987).

In order to be considered *per se* disabled at step three of the sequential evaluation process, a claimant must show that his or her impairment(s) meets "*all* of the specific medial criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990)) (emphasis in original). Moreover, "[f]or a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id*. (emphasis in original).

It is the ALJ's burden to identify the listed impairments relevant to the claimant's impairments. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 n. 2 (3d Cir. 2000). It is the claimant's burden to present sufficient medical findings to show that his or her

9

impairment matches or equals a listed impairment. *Williams*, 970 F.2d at 1186.  In determining whether a claimant has met this burden, the Commissioner must undertake an analysis to determine whether a claimant's impairments meet or medically equal the criteria for an impairment found in 20 C.F.R. Part 404, Subpt. P, Appx. 1. 20 C.F.R. §404.1520(a)(4)(iii).  In determining whether an impairment meets or medically equals a listing, the Commissioner must specify those listings that potentially apply to the claimant's impairments and give reasons why said listings are not met or equaled.  *Burnett*, 220 F.3d at 119-20 n. 2;  *Scatorchia v. Commissioner of Social Security*, 137 Fed.Appx. 468, 471 (3d Cir. 2005) ( The Commissioner must evaluate "the available medical evidence in the record and then [set] forth that evaluation in an opinion … .").

Subpart 11.00 lists disabling neurological disorders.  Listing 11.06, in particular, sets forth the requirements for Parkinsonian syndrome:

> *Parkinsonian syndrome* with the following signs: Significant rigidity, brady kinesia, or tremor in two extremities, which, singly, or in combination, result in sustained disturbance or gross and dexterous movements, or gait and station.

20 C.F.R., Part 404, Subpt. P, Appdx. 1, §11.06.

Here, the ALJ evaluated Plaintiff's impairment in comparison to Listing 11.00 and found:

> As discussed below, the medical evidence does not contain the objective signs, symptoms or findings, or the degree of functional limitations, necessary for the claimant's impairments, considered singly or in combination, to meet or equal the severity of any sub-section of the above-mentioned listings or any other section contained in Appendix 1.  In reaching this conclusion, the Administrative Law Judge has considered the opinions of the State Agency medical consultants who evaluated the issue at the administrative review process and reached the same conclusion. ... The Administrative Law Judge also noted no treating or examining medical source has stated the claimant has an impairment or combination of impairments that meets or equals the criteria of any listed impairment.

(R.at 16).  The ALJ further found that "the clinical and objective findings are inconsistent with an individual experiencing such debilitating symptomology." (R. at 18).

The Commissioner contends that Plaintiff has failed to establish that he suffers from tremor in two extremities, as required by Listing 11.06.  The overwhelming medical evidence of

record indicates that Plaintiff has met the requirements of Listing 11.06 and is, therefore, *per se* disabled.

As a threshold matter, the Court notes that the ALJ did not specifically address the requirements of Listing 11.06, despite Plaintiff's diagnosis of hemiparkinsonism by Dr. Chipman in September of 2007. (R. at 193-195). As a result, it is not clear whether the ALJ considered the requirements of Listing 11.06 in comparison to Plaintiff's specific symptomology. *See also Burnett*, 220 F.3d at 119 (holding that the ALJ is required to provide "more than just a conclusory statement that a claimant does not meet the listings").

Furthermore, a review of the record medical evidence shows unequivocally that the Plaintiff's hemiparkinsonism met the criteria of Listing 11.06. In determining that Plaintiff's impairments did not meet or equal any of the listings for neurological disorders, the ALJ referred to the opinions of the state agency medical consultant and to the fact that none of Plaintiff's treatment providers or examining medical sources has stated that Plaintiff has an impairment which meets or equals a listing. (R. at 16). Later in his opinion, the ALJ considered the treatment records from Dr. Michael Parsons, Dr. Cathrin Buetefisch and Dr. Joseph Chipman. (R. at 17). He found that these treatment records do not support a finding of disability. However, the treatment notes, particularly those from Dr. Chipman, do not support the ALJ's finding at this step.

Between 2006 and 2007 the medical records show that Plaintiff suffered from tremor of the right arm and pain and tremors in his right leg, without any objective findings or diagnosis. On September 18, 2007, Dr. Chipman determined that Plaintiff had hemiparkinsonsim. (R. at 194-95). Indeed, Dr. Chipman indicated that while Plaintiff had some features that were inconsistent with Parkinson disease, including good eye blink and good expression of face, he had certain symptoms that met the criteria for Parkinson syndrome, including cogwheel rigidity and a resting tremor. (*Id.*). Therefore, according to Dr. Chipman, a diagnoses of hemiparkinsonism was appropriate. (*Id.*). In addition to this diagnosis, he noted that plaintiff had

significant rigidity in his right upper extremity and a rolling resting tremor in his right hand. (R. at 194). He also noted that Plaintiff had decreased strength in his right lower extremity, as well as "extreme rigidity in his right arm as well as his right leg." (R. at 193). He prescribed Requip. (R. at 195).

Prior to his final diagnosis in September 2007, Plaintiff saw several physicians, each of whom noted Plaintiff's significant resting tremor in his right upper extremity, in addition to cogwheel rigidity and pain and tremors in his right lower extremity. (R. at 135, 125-128, 140, 153, 158-59, 200). Specifically, in 2006, Dr. Asthana noted that Plaintiff had right arm rigidity, pain in his right hip and leg, as well as tremor in his right foot. (R. at 124). On examination by Dr. Torres-Trejo in September 2006, Plaintiff had difficulty with tapping his right foot, and Dr. Torres-Trejo noted a persistent obvious termor in Plaintiff's whole right arm. (R. at 201). Furthermore, while Dr. Buetisfisch found Plaintiff's symptoms puzzing in April 2007, she opined that Plaintiff had right-sided abnormality that was likely neurological. (R. at 183). Additionally, she prescribed Artane and Requip to address hemiparkinsonism syndrome. (*Id.*). Finally, records from a consultative examination by Dr. Detore, a psychologist, in 2006 indicate that Plaintiff did not display any signs of psychiatric or emotional problems, but had a constant tremor in his right arm that Dr. Detore believed to be physically debilitating. (R. at 166).

In making his determination the ALJ focused mainly on the opinion of the state agency consultant, who evaluated the medical evidence of record and concluded that Plaintiff would be capable of performing work at all exertional levels. (R. at 19, 101- 102). First, the opinion of a state agency reviewing physician must be examined in order to determine whether, and how well, the opinion takes into account and explains the medical evidence of record, including the opinions of treating physicians. *See Gonzalez v. Astrue*, 537 F.Supp.2d 644, 663 (D.Del. 2008). *See also* 20 C.F.R. §416.927 ("because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions"). Here, the opinion of the state agency

reviewing physician did not even engage in a discussion or review of the records from Dr. Chipman. (R. at 101-102). Instead, the reviewing physician noted treatment from Dr. Asthana and records from West Virginia University Hospital. (R. at 102). This assessment fails to take into consideration significant medical opinions and records from Dr. Chipman.

Furthermore, under the circumstances presented an ALJ may not give greater weight to a non-examining state agency examiner than to a Plaintiff's treating physician, particularly when said examiner has failed to give sufficient basis in the medical records for that opinion. 20 C.F.R. §§404.1502 and 416.902; §§404.1527 and 416.927. "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)); *see also Allen v. Bowen*, 881 F.2d 37, 41 (3d Cir. 1989); *Podedworney v. Harris*, 745 F.2d 210, 217-18 (3d Cir. 1984). And reports from consulting physicians who have examined the claimant and rendered assessments on conditions within their respective area of expertise are to be given appropriate evidentiary weight, which will vary based on the circumstance and the other medical evidence presented. *Gordils v. Secretary of Health and Human Services*, 921 F.3d 327, 328 (1st Cir. 1990) (citing *Rodriguez v. Secretary of Health and Human Services*, 647 F.2d 218, 223 (1st Cir. 1981) (weight to be afforded a consulting/examining physician's report "will vary with the circumstances, including the nature of the illness and the information provided the expert."). For example, where the consulting/examining physician's report constitutes the only probative medical evidence on the condition in question, it may be entitled to great or even controlling weight. *See Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995) (examining physician's report accorded significant weight where it was only medical assessment on point and corroborated by other evidence). Similarly, examining physician's reports that rest on objective clinical test

results may be entitled to significant or controlling weight. *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

A review of the medical evidence from Plaintiff's treating physicians and consulting specialists, as discussed above, indicates that Plaintiff suffered from a progressive debilitating disease that had produced significant rigidity and tremor in his upper and lower right extremities. Against this backdrop it was clear error to place any weight on an unsupported and unexplained assessment from a non-examining state agency physician who rendered a residual functional capacity that virtually was incredible on its face.

The ALJ also appears to have based his decision on Plaintiff's self-reports of daily activity, and found them to be inconsistent with his complaints of debilitating limitations. Again, as discussed above, several treating and consulting physicians noted Plaintiff's disturbance in gross and dexterous movements, as required by Listing 11.06. (R. at 130). Additionally, Plaintiff testified that the tremors in his right arm and rigidity and pain in his right leg make his daily activities difficult. Specifically, he testified that he is unable to hold a cup of coffee, has difficulty walking due to his right leg and has fallen as a result, is unable to balance, requires his mother's help in taking care of his son and does little housework or grocery shopping. (R. at 242-246). Plaintiff's daily activities thus fall far short of supporting a determination that he is not disabled. *See Wright v. Sullivan*, 900 F.2d 675, 682 (3d Cir. 1990) (citing *Smith v. Califano*, 637 F.2d 968, 971 (3d Cir.1981)) (holding that "disability does not mean that a claimant vegetate in a dark room excluded from all forms of human and social activity").

Moreover, while the ALJ noted that Plaintiff attempted to work after his alleged onset date, cleaning and repairing machines, Plaintiff testified that he was unable to remain at that position because of his symptoms and because the employer believed it was unsafe for him to continue working. (R. at 326-238). There was no evidence to the contrary and this evidence of Plaintiff's daily activities only further supports a determination that Plaintiff meets the requirements of Listing 11.06. In short, the overwhelming medical evidence of record, as well as

Plaintiff's reports of daily activities indicate that Plaintiff has significant rigidity and tremors in his right upper and lower extremities, which result in sustained disturbance in gross and dexterous movements.  Therefore, Listing 11.06 directs a finding of disabled.

> **B.    Whether the ALJ Erred at Step Five of the Sequential Evaluation Process**

Plaintiff argues that the ALJ erred at step five of the sequential evaluation process. (Docket No. 9 at 11).  Specifically, Plaintiff contends that the ALJ's determination that Plaintiff had the residual functional capacity to perform light work using only his left hand fails to address adequately Plaintiff's limitations on his ability to walk and/or stand. (Docket No. 9 at 11).  As a result, the hypothetical question posed to the vocational expert did not include any limitations on Plaintiff's ability to stand or walk and the ALJ's determination at this step is not supported by substantial evidence (Docket No. 9 at 12).

As discussed above, the Court finds at step three that Plaintiff has established that he is *per se* disabled.  Alternatively, however, assuming that Plaintiff had not met his burden at step three, the evidence of record supports only a determination that at step five the Commissioner has failed to show  there are jobs in the national economy that Plaintiff can perform.

At step five of the sequential evaluation process the Commissioner has the burden to show that a claimant is capable of performing substantial gainful activity.  *Allen v. Barnhart*, 417 F.3d 396, 401 n. 2 (3d Cir. 200).  In the evaluation, the Commissioner must determine whether the claimant can work, considering his or her age, medical impairments, education, past work experience and residual functional capacity.  20 C.F.R. §404.1520(f).  In doing so, the ALJ is required to analyze the cumulative effect of all of the claimant's impairments.  *Id.*; *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir.1999).  In making this determination, an ALJ will often rely on the testimony of a vocational expert.  *Plummer*, 186 F.3d at 428 (citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)).

Plaintiff's first challenge is to the ALJ's determination of his residual functional capacity determination.   A claimant's residual functional capacity is defined as "that which an individual

is still able to do despite the limitations caused by his or her impairment(s)." *Fargnoli*, 247 F.3d at 40 (quoting *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 121 (3d Cir. 2000)) (quotations omitted); 20 C.F.R. §404.1525(a)(1). In determining a claimant's residual functional capacity, all of the claimant's impairments, both severe and non-severe, must be considered. 20 C.F.R. §404.1545(a)(2). Additionally, the ALJ is required to consider all of the evidence in making this determination, including the medical evidence, the claimant's subjective complaints and the evidence of daily activity. *Burnett*, 220 F.3d at 121 (citing *Plummer*, 186 F.3d at 429; *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986)). *See also Fargnoli*, 247 F.3d at 41 (holding that the ALJ must consider all evidence, including "medical records, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others").

Here, the ALJ determined that Plaintiff had the residual functional capacity to perform "light work except he is a right hand dominant person with no use of his right arm and is limited to use of left non-dominant hand to grasp and has no limitations standing, walking or sitting." (R. at 16). In making this determination, the ALJ determined that Plaintiff's complaints that he could only climb 10 steps and walk 100 feet at a time without stopping due to pain, could only stand for approximately 15 minutes, sometimes falls while walking, and can sit for only 30 to 45 minutes and shakes continuously to be unsupported by the medical evidence of record. (R. at 17-18). The substantial evidence of record does not support this assessment. Indeed, the medical evidence of record indicates that, in addition to a continuous tremor and cogwheel rigidity in Plaintiff's entire right arm, he also has rigidity and tremors in his right leg that do limit his ability to walk, sit and stand.

As previously noted, an ALJ is required to give great weight to the opinions of treating physicians where their assessments are "based on a continuing observation of the patient's condition over a prolonged period of time.'" *Morales*, 225 F.3d at 317; *see also Fargnoli*, 247 F.3d at 42 (citing *Dobrowolsky v. Califano*, 606 F.2d 403, 406-07 (3d Cir.1979)). Moreover, in reviewing the medical evidence of record,"the ALJ may not make speculative inferences from

medical reports." *Plummer*, 186 F.3d at 148 (citing *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981)). Indeed, the ALJ may not substitute his own opinions for the opinions of an examining physician. *Id*. (citing *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985)). When the medical evidence of records conflicts, " the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Id*. (citing *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)). Moreover, the ALJ must consider all the evidence and give some reason for dismissing the evidence he chooses to reject. *Id*. (citing *Stewart v. Secretary of H.E.W.*, 714 F.2d 287, 290 (3d Cir.1983)).

Here, the treatment records from Dr. Asthana indicate that Plaintiff had pain and weakness in his right leg, as well as tremors in his right foot. (R. at 124; 218). Additionally, records from Dr. Chipman note that Plaintiff had pain and tremors in his right leg as a result of hemiparkisonism. (R. at 194-95). Dr. Chipman indicated Plaintiff had decreased strength and extreme rigidity in his right leg. (R. at 193). As Plaintiff's treating physician and consulting specialist, the reports of Dr. Asthana and Dr. Chipman must be accorded significant weight. *Fargnoli*, 247 F.3d at 42.

Moreover, Plaintiff explained that as a result of his hemiparkinsonian symptoms, he experiences tremors in his right leg for most of the day. (R. at 248). He further testified that he has fallen a couple of times while walking because of these tremors. (R. at 243). He uses a cane, but even then can only walk for ten to fifteen minutes until he must stop because of the tremors. (R. at 244). Both Plaintiff and his doctors indicate that he has been prescribed various medications for his hemiparkinsonian symptoms, but they have not been effective in controlling his tremors or rigidity. (R. at 124; 200; 242). In fact, Plaintiff testified that his symptoms have continued to become progressively worse. (R.at 242).

A claimant's subjective complaints of pain and limitations, when supported by the medical evidence, are to be afforded great weight. *Ferguson v. Schweiker*, 765 F.2d 31 (3d Cir. 1985). Here, Plaintiff's complaints about tremors, rigidity and pain in his right leg were

supported by the treatment records from Dr. Asthana and Dr. Chipman.  Furthermore, Plaintiff's complaints of pain, rigidity and tremors, while initially puzzling prior to his diagnosis, were consistently determined to be credible by his treating physicians, as well as consultative psychiatric examiners. (R. at 124-130 ,160-62, 166, 181, 193-195, 200).  Because there were medical bases for plaintiff's complaints of pain and reported limitations and the treating sources did not doubt the existence of these symptoms, the ALJ erred in failing to accord proper weight to this aspect of the record.  *See Stewart v. Sullivan*, 881 F.2d 740 (9th Cir. 1989) (it is error to reject consistent evidence of excess pain on the ground that is not supported by objective medical findings where there is medical evidence to support the existence of some pain); *Ferguson v. Schweiker*, 765 F.2d 31 (3[d] Cir. 1985) (where claimant's testimony as to pain reasonably is supported by medical evidence, the ALJ may not discount the pain without contrary medical evidence; and where the complaints are supported by medical evidence, they are to be given great weight).  Consequently, the ALJ erred in failing to include Plaintiff's limitations in his ability to sit and stand in his residual functional capacity determination.

Moreover, the vocational expert's testimony does not support the conclusion that there are jobs Plaintiff could perform.

At the administrative hearing, the ALJ asked the vocational expert the following hypothetical:

> Q.    I'd like you to assume this hypothetical. Somebody with [Plaintiff's] age, education, training and work experience, assume no more than a light maximum residual functional capacity, right-hand dominant individual, due to tremors in the right upper extremity would not be able to use it at all for grasping, handling, fingering.  Assume a person needing to use the left non-dominant upper extremity to grasp or finger at the light level. Are there any jobs at either light or sedentary that you could suggest?

(R. at 252).  The vocational expert testified that, assuming these limitations, the individual could perform work as a hostess, greeter or usher at the light level.  *Id*.  He also testified that, at the sedentary level, this individual could perform work as a surveillance system monitor, but that this

would be a stretch, as it required record keeping.  *Id.*  The vocational expert testified that the

hostess, greeter and usher jobs would require an individual to be on his or her feet six of eight

hours in a day. (R. at 253).

       Plaintiff's counsel asked the vocational expert the following hypothetical:

> Q.    Assuming the same – the hypothetical that the Judge gave you, right-hand dominant Claimant, could not use the right hand, had to rely on his left hand totally, but also assuming that he would be off task 25 percent of the day due to problems associated with having tremors, would work be available to such and individual?

(R. at 253).  The vocational expert testified:

> A.    No, none in competitive work. In unskilled competitive work, it's required the worked be on task or productive at least 85 to 90 percent of the work time.

*Id.*  Plaintiff's counsel also posed the following hypothetical:

> Q.    And, again, assuming the same hypothetical that I just referred to, but assume that the hypothetical individual would miss work two or more times a month, be absent from work two or more times per month, would work be available to such an individual?
>
> A.    No, unskilled workers can miss one day a month normally and still keep their jobs.

*Id.*

       First, the Court finds that the ALJ's hypothetical question to the vocational expert failed

to take into consideration all of Plaintiff's limitations.   "A hypothetical question must reflect all

of a claimant's impairments that are supported by the record; otherwise the question is deficient

and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*,

820 F.2d 1269, 1276 (3d. Cir. 1987) (citing *Podedworny*, 745 F.2d at 210.  As discussed above,

the ALJ's residual functional capacity determination failed to include limitations on Plaintiff's

ability to sit, walk and stand.  Because the ALJ's hypothetical question to the vocational expert

was deficient, the vocational expert's response cannot be considered substantial evidence.

       Furthermore, the vocational expert testified that an individual with Plaintiff's limitations

in the ability to sit, stand and walk would be unable to meet the demands of gainful employment.

This testimony supplies yet another piece of substantial evidence indicating Plaintiff is unable to perform work existing in the economy and, therefore, a finding of disability is appropriate.

**V.    Conclusion**

The Act describes disability as the inability to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to last for a continuous period of at least twelve months.  The ability to engage in substantial gainful employment means more than the ability to do certain of the physical and mental acts required on the job; the claimant must be able to sustain the physical and mental demands of work-related activities throughout continuous attendance in a regular work week.  *Dobrowolsky v. Califano*, 606 F.2d 403, 408 (3rd Cir. 1979). The question thus is not whether a claimant can perform activities consistent with substantial gainful activity on any particular day, but whether the claimant has the ability to engage in work activities on a systematic and sustained basis.  Plaintiff had the burden of making out a prima facia case that she was disabled within in the meaning of the Act.  *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980); *Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980); 20 C.F.R. § 404.1512(a).  This burden generally is met where the record clearly substantiates a claimant's subjective claim that he or she has an impairment which prevents the claimant from engaging in substantial gainful activity.  *Rossi v. Califano*, 602 F.2d 55 (3d Cir. 1979).  The substantial evidence of record supports only the conclusion that plaintiff could not engage in such activity as of September 18, 2007, when Dr. Chipman recognized that plaintiff suffers from hemiparkinsonsim and the disease had progressed to the point where it was producing debilitating limitations in both the right upper and lower extremities.  The medical and other evidence of record further supported only the view that the symptoms produced by plaintiff's impairment and the procedures undertaken to treat it have continued to render plaintiff disabled from all forms of substantial work activity. They also suggest that Plaintiff's impairment had already progressed to a disabling condition prior to that date.  Accordingly, to the extent the ALJ's findings and conclusions reflected a determination that plaintiff was not disabled on or

after September 18, 2007, they unquestionably were not supported by substantial evidence.   As a result plaintiff's motion for summary judgment must be granted and the matter will be remanded to the Commissioner with direction to recognize Plaintiff was disabled on or before September 18, 2007.


Date: September 30, 2009

                                                s/ David Stewart Cercone
                                                David Stewart Cercone
                                                United States District Judge


cc:      Counsel of Record